Mr. Rosenkranz, we'd be happy to hear from you. Good morning, Your Honors. May it please the Court, Josh Rosenkranz representing Dish Network. In this case, the class that included the wrong plaintiffs have sued the wrong defendant. Let me start with the class definition. Plaintiffs took a shortcut to class certification here, and the result is a disastrously defective class. It's a class that includes non-subscribers, but even worse, it's a class that includes non-subscribers who were not even living at the residence when the phone rang. Now, there is a right way to certify a TCPA class. The way it's generally done is you go to the phone company, you get a list of subscribers whose subscription did not change hands over the course of the class, and then you cross-reference that by creating a subset of those subscribers who received two unlawful calls. That is not at all what happened in this case. The District Court let plaintiffs prove class membership using SSN's database. It's a database of leads. It's a list of people who are associated with a phone number. Now, how do you get to be associated with a landline? You get there simply by giving your number to someone at some point. It could be a credit card application. It could be a warranty. That means that the database includes former subletters, former girlfriends, kids who've long since gone off to college. In other words, it includes a variety of people who are not the subscriber, who are not living in the residence. Well, I'm not sure that you know that the class has to be limited purely to subscribers. The statute uses the word subscribers in a number of sections, but when it describes the private right of action, it doesn't use the word subscriber. It uses the word person. Understood, Your Honor. I'm actually addressing, even before we get to the statutory point, I'm saying that there is a class here that doesn't check any box. They're not the subscriber, okay, but they're also people who were not. How can it not check any box when the description of the class seems to follow the almost verbatim description of the private cause of action? Well, Your Honor, that's a very important point because there is a departure from the definition. The district court defined the definition, and it defined the definition to include not subscribers, not people whose phone numbers received a phone call, but rather a gloss on the definition that said the plaintiff could prove this class. Fundamentally, the class was defined as persons receiving more than one phone call within a 12-month period by or on behalf of the same entity. And what I'm wondering here, I think it's important to understand the purpose of this statute, which was to cut down on these intrusive telemarketing calls. And it seems to me that the Congress in passing this statute set forth a private right of action and used specific language to denominate who could take the private right of action. And then Judge Eagles, in defining the class, seemed to sort of map onto that statutory language. Now, of course, a district court has some latitude here. It's an abuse of discretion standard in terms of certifying a class. But it seemed to me, honestly, to track pretty close to the language that Congress had used. Totally agree. I totally agree with you, Your Honor. The class definition, but the district court did not require plaintiff to prove the class definition. Plaintiff cannot point to a single place in the record where he was ever required to prove, to actually prove that the members of the class all received two unlawful calls, much less. The question I have there is whether a district court has some sort of discretion in sequencing the way the class action proceeds. And so Judge Eagles decided to proceed by addressing larger issues of class liability and the larger issue of agency. And then to leave specific questions of class membership, which are rather granular issues and very particularized issues, later on to the claims adjudication process. Now, the question I have then is do we tell district courts, henceforth, that no, you've got to go through this member by member or whatever prior to the adjudication of class-wide liability. I'm not sure. I'm just wondering if the district court doesn't have a certain discretion in the order in which these things are sequenced. We leave it to district courts to manage complex proceedings. This is one. And it would have been fruitless to have gone through and said, oh, this person is a member, this person is not a member, if there were no class-wide liability to begin with. You're asking for a sequencing the way you want to sequence it. No, Your Honor. You're asking for an unnecessary expenditure of resources, aren't you? Your Honor, what I'm saying is this class definition, by definition, includes a huge number of people who were not injured. Is this thing still being refined? This class is still being refined somewhat. I may be using the terminology wrong. You've got a special master, and you've got plaintiff's procedures going on. Yes. I mean, it's not even over. Are you sure you have a final order to come up here with an appeal? I am not sure we have a final order. You're not sure? You're the one who's brought the appeal. Your Honor, we raised the question of jurisdiction to the court, and the motions panel told us that the court has jurisdiction. So we're accepting that. We accept jurisdiction. But it's really important to make sure that the court understands. But you're the appellant, right? Yes, Your Honor. We had to file a notice of appeal because if it was a final order, we had one shot. But there is a special master, and these claims are being processed. That is correct, Your Honor. But I want to get to the point about the class definition and ascertainability. So class definition is a momentous moment, and it is critically important that the class be defined in a way that doesn't have thousands of people who are not actually injured, or, to Judge Wilkinson's question, if it does have people who are uninjured, that there's a way to ascertain who they are. So here we have a class that, yes, Your Honor, the district court said was a class of people whose phone numbers received more than one call, but that's not what was ever proven. Never to this point, even in the claims process, has Krakauer ever been forced to prove that any human being who was associated with a number other than Krakauer himself received two calls. And let me just make this concrete. You can be associated with a phone number, as he said, by filing a credit card request. My son is associated with my phone number. He's been out of the house for two years, and if he is entitled to, if he gets a claim for him, if he is entitled to recover, there's no way in the world. To which I would respond only this, and that is that the do not call registry, it lists phone numbers. In other words, it doesn't say do not call such and such a person or do not call such and such a person. The do not call registry has phone numbers listed. So why wouldn't that be a legitimate starting point or a legitimate way to define the class by numbers? Because that's the way the registry is. That's the way the registry reads. It is fine, Your Honor, to start. That's the statutory violation. That's the violation, but that's not who gets to sue. The person who gets to sue is, in plaintiff's view, either the subscriber or anyone associated with it. All right, but the violation is to call the registered number more than once within a 12-month period. Okay? If you say who is entitled to sue, how are we supposed to, I mean, why wouldn't it be someone who could receive a call from that number? Because their privacy would be infringed if they had an association with the number, and the do not call number was twice dialed within a 12-month period. Your Honor, if they left the home, if they are in a different residence, if the phone number – That's right, and there may be those individual cases, but what I'm asking you is why was it an abuse of discretion for the district judge to leave those for the special master and the claims adjudication process? Your Honor, and the answer is ascertainability. Per the opinion of this court at EQT, there has to be a reasonable way to figure out, if you are not the subscriber, 10 years later, that you received two calls. There's no way to ascertain that. Well, there you're slipping back into the verbal fallacy of confining this cause of action to actual subscribers. I'm not. That's not the way that Congress wrote the statute. So I am not confining it only to people who are actual subscribers. For this portion of my argument, for this portion of my argument, I'm saying the claim forms have gone to people associated with the number who are not subscribers, granted, but there's no way to prove 10 years later that every one of them received two phone calls. The subscriber can certainly sue and say my phone line was blocked. All right, but the question I have again, aren't you putting the cart before the horse? The question, according to this court and the Supreme Court, is whether there is ever a point at which the horse can't, at which the cart can be figured out. So when you've got a class of 18… That's going to happen. Nothing you've said today is, you're not precluded from raising those very points. It's just a question of when you raise them and whether they can be… It's not that the points you raise are illegitimate. They're not illegitimate. The question is, do they all have to be raised right at the outset before any issues of class liability are concerned, or can they be left to a more granular and particularized process before a special master? That's the question I have, and I'm just not sure that the district court doesn't have unlimited discretion in these matters. But in terms of defining a class and certifying a class, a district court has some discretion. It's subject to an abuse of discretion standard. And in terms of sequencing a class action, a district court has got to be entrusted with some managerial responsibility in terms of what is effective in terms of resources and what is going to produce the most just and accurate result in the end. I understand your point. I see I'm beginning to run into my rebuttal time, and I had a second point. So let me just answer that point as succinctly as I can. So, yes, you can have a second process that weeds out injured from uninjured, but it's got to be a process that ex ante could possibly make sense. And when you've got 18,000 individuals and you don't know whether any of them are the subscriber, then— It isn't that Congress didn't write the statute. I do not want to tear up this statute. And Congress wrote the statute in terms of a registry and in terms of a do-not-call registry. And the do-not-call registry is not written with respect to subscribers. The do-not-call registry has a list of numbers, and the statutory violation is when those numbers are receiving an excessive number of calls against the wishes of those who led to the numbers. Yes, Your Honor. Yes, I understand. Numbers do not have injury. Numbers cannot bring claims. Human beings can. So when this human being comes in and says, I received two calls 10 years ago, if every single one of them, we have a right to challenge that two-call finding? And that's a jury question for 18,000 people. Now, I hope it's okay if I just mention my final point without eating too much into rebuttal. Yeah, absolutely. Sure. So, Your Honor, so the agency point is this. I'm going to put it as succinctly as I can. When DISH directed SSN in the clearest possible terms, do not call Krakauer, take him off your lists effective immediately, SSN could not have been DISH's agent when it then proceeded to call Krakauer. The district court's agency ruling has to be reversed for two reasons. One of them I will rest on the briefs on, which is that they were not Wasn't the agency question submitted to the jury? It was, Your Honor. Yes, and wasn't there evidence that DISH was in sort of a willful blindness situation, see no evil, hear no evil, but they knew exactly what SSN, what is the name of it? SSN. What its agent was doing. And what it was trying to do was to insulate itself from liability by pretending not to know what was going on. But then the evidence came before the jury that the telemarketer in this case, for example, pursuant to an understanding with DISH, was only telemarketing DISH products. That there was no other company involved. And so if they were exclusively telemarketing DISH products, why was it impermissible for the jury to reach the finding with respect to agency that it did? Well, Your Honor, the fact that it was exclusive, first of all, that was not a legal requirement and it doesn't create agency. Agency is created by two things, assent to an agency relationship and day-to-day operational control. And there were two legal errors to the agency finding. The first is that the district court's review of the record did not give sufficient weight to the contract that defined the relationship. And the second, equally important, is that everything that the district court pointed to was the wrong kind of control. Quality control, legal compliance, and setting of specifications per service do not turn a contractor into an agent. And even if they were an agent... That's fine, but it was a factual question. And what you're arguing, essentially, was because you slapped a label of independent contractor on the contract. You know, that was dispositive. But the jury could find that, you know, that was a subterfuge. I mean, that was... These things were in the province of the jury. And when you look at the degree of control and the degree of exclusivity, that SSN had vis-a-vis its relationship with DISH, you just are coming to the conclusion that, you know, the jury was not off base in the finding that it did. Your Honor, I take your point. I'm going to rest on the briefs on whether there was an agency relationship. That's fine. But scope of agency, it simply cannot be true. You have to agree that we take the jury verdict in the light most favorable. Of course, Your Honor. But the question is, yes. But the legal question is what evidence counts. And when you cut out evidence that are about quality of services, that define the scope of services and that are about legal enforcement, there's virtually nothing left. But I want to get to scope of agency. First of all, you've got some time for rebuttal, and you can tell me in all of us why I'm hopelessly wrong. And in the meantime, Judge Berger had some questions, and I want her to ask those. Well, just that before we leave that, I wanted to make the point, the court not only considered those issues and the jury that you have referenced, Mr. Rosenkranz, but the court looked carefully in its opinion at conduct and acquiescence in order to get to the issue of agency. Importantly, it also seems somewhat contradictory to make the representations in that process with the 46 attorneys general that DISH would investigate, monitor, require compliance, and sanction those who were not in compliance with the statute. That also is evidence, I think, coming from DISH's own mouth of control. And it seems inconsistent to make those representations to claim control in that process with the 46 attorneys general, and then to argue for agency purposes that there's no control and therefore no agency. Your Honor, this goes to the question of whether there's an agency, and I will answer that. This ABC, the Assurance of Voluntary Compliance, does not create an agency relationship. It explicitly says that they're independent contractors. And I don't mean that it does. I'm just looking at the conduct. Yes, and the reason it is not evidence of control is because control is day-to-day operational control, monitoring, requiring legal compliance in a contract, and investigating are not day-to-day operational control. McDonald's requires that of all of its franchisees, but they are not its agents. The U.S. government, I mean, this is the Supreme Court's case in Logue. The U.S. government has huge volumes of regulations that go into contracts that require legal compliance, that force certain sorts of services to be done in certain ways. In Logue itself, they give the government the opportunity to come on site whenever it wants during normal business hours. That did not create an agency relationship. And if it did, that would be disastrous for the law of independent contracting because you can always come to a jury and point to something that says, oh, come on, they could investigate, they could monitor, and there are contractual penalties. But scope is really a key here, and this is something that plaintiff never addresses in his brief. All right, well, I'm going to let you address it further later on. We've given you some extra time. I'm going to ask Judge King if he has any further questions. Judge Berger, do you have any further questions? All right, you have rebuttal time. Thank you, Your Honor. Now, Mr. Barrett, let's hear your side of it. Thank you, Your Honor. May it please the Court. Good morning. Addressing some of the points that the Court had raised during questioning of counsel, first of all, Judge Wilkinson, you are correct that district courts do have tools at their disposal to sequence the manner in which a class action is run, and more specifically that's Rule 23D that says district courts may issue orders that determine the course of proceedings or prescribe measures to prevent complication in presenting evidence or argument. And that is considerable discretion, as it should be. Judge Eagles here was faced with managing a class action trial. Resulting in a jury verdict and as a result of her sound management and as a result of many stipulations that we had reached pre-trial with DISH. My concern was if you push the claims adjudication process to the very front of the line, you could go through all those things for nothing. That's right. If there was no class-wide liability. And so there was just an efficiency angle to it as well. And these are very difficult cases to manage and to try. And it seemed to me that she did have a certain amount of logic. It did. And the record, there are transcripts of hearings. I believe there were four pre-trial hearings where the court was working with counsel to try to determine how to present this case efficiently. And the court determined that getting into issues of identity, of class members, would be a waste of time for the jury because really it's not even an issue for a jury to decide. Why would a jury be determining class membership? Under Rule 23, the court determines class membership. What that jury did was in a very efficient five-day trial based upon, by the way, agency instructions that DISH does not challenge as wrong here. The jury was properly instructed on agency. Determined that all 51,000 calls were received. And what does that mean? That doesn't mean a telephone call ringing in an empty house. Those calls were not in this class. We had expert testimony that was accepted by the jury and found to be credible in post-trial rulings by Judge Eagles that established that the calls in the class were connected calls, calls that were actually received. They were not abandoned calls, busy calls, and so on. So the jury determined in its verdict form, again, to which DISH does not object, that all class calls were received. And under Rule 23D, Judge Eagles had the discretion to determine the identity of those persons who should be paid. If you step back a little bit, you've got an important statute here. Congress had extensive hearing. And you weren't inaccurate to say that there was a great deal of public distress and public outrage really at having the privacy of family time interrupted repeatedly by telemarketers. Now, that may have been a correct judgment on the part of Congress. It may not have been. But they clearly wanted to do something about a problem that was bothering a large number of consumers who have no way, really, to fend themselves off against these kind of unsolicited phone calls. And so they set up this registry. And it was for the protection of people who before had felt helpless and powerless in the face of repeated phone calls to these numbers. And then the question comes, we should not be grinding this statute down into meaninglessness. We should not. We should respect what Congress tried to establish. And this statute lends itself to a class action because the individual damages are likely to be relatively small. And it is not economical to bring suit after suit after suit on an individual basis. So you've got a statute of Congress. It was meant to accomplish something. The vehicle by which it is accomplished is, practically speaking, a class action because of the economics of it all. And if we start to just draw up district court discretion and stop the district court in its tracks on managerial issues and class certification issues, then we simply have undermined the ability of the Congress to be responsive to the will of the people. This, to me, is at the heart of it all. Yes, Your Honor. And I think you'll find support for all of those comments in the congressional findings. The congressional findings talk about consumer outrage over the proliferation of these calls into their homes. Outrage over the proliferation of calls into their homes. More than subscribers live in homes, people live in homes. Our families live in homes. And so that is who Congress intended to protect. When I think of the do not call law, I think of a no solicitation sign that I might put on my front door. Do not solicit this house. If you do solicit this house, you may be sued. That's what the do not call list essentially is. It's a bright line rule. Everybody knows, everybody who telemarkets and everybody who benefits from telemarketing, as Dish has over the years, knows don't call people on the do not call list. If you call people on the do not call list, you might be sued. That's right. And there's a safeguard here, and that is that you have to make two calls. It's not just one. One can be an accident. You can maybe dial the wrong number or tap on the wrong number. That's right. When it becomes more than one, the chances of it being an accident are greatly reduced. And also there's a time limitation. They have to be done, there have to be multiple calls within a 12-month period. So there's both a numbers limitation and there's a time limitation to make sure that people don't get strung up accidentally or that they make two calls over a period of years. I mean, this is a very carefully put together statute. And it is not without protections for the telemarketers. But at the same time, there were abusive practices going on, and Congress felt it needed to do something about it, and we shouldn't grind the statute under in the judicial process. That's not right. Yes, Your Honor. On Your Honor's point earlier about efficiency, the efficiency of these cases, again, this was 51,000 calls determined by the jury to a violated federal law determined in five days. The evidence that was put on to establish the class members' claims was the same as the evidence put on to establish our class representatives' claims. It was the call records, the actual records of the calls that do, in the vast majority of cases, identify the person that the dealer was intending to call. So we were able to work this case very efficiently, and we believe that the process has been fair throughout. How long is this claims process going to go on? We are at the end of it. It's ongoing while this appeal is proceeding? Yes, it is. There's been no final ruling wrapping it up. This is a new kind of interlocutory appeal you've got up here. So it is an allocation issue, Your Honor, and I understand your comments and questions about jurisdiction. I would commend a case called Tyson Foods. I've looked at Tyson Foods, Justice Kennedy. Yes. Yeah, I'm familiar with that. A U.S. Supreme Court case from a couple of years ago. They've carved out a new interlocutory appeal. Well, what the court did was describe the issue as an allocation issue and send it back down to the district court for determination of who was actually injured. There was some question at that case in front of the Supreme Court about who was actually injured, and the Supreme Court sent it back down. The district court did what district courts do, which is use their discretionary powers to manage class actions and authority that they have under Rule 23, determine an allocation formula, and ultimately that case was resolved. So allocation issues could be viewed as attorney's fees kinds of questions. You know, we have a judgment, then we have a motion for attorney's fees. We have an execution of the judgment. That is the way that I believe Judge Eagles has described this process, is distributing the judgment. It's a judgment distribution process that is properly reserved for now. I don't even recall whether I was on the panel or not, but we have a prior order of the court indicating that there was jurisdiction. I don't know that that was true. My recollection of that was... We declined to dismiss the cases interlocutory. There was no request to dismiss the case. There was a request to suspend briefing. There was no request to dismiss. And I believe that what the court said in that disposition of that motion was that it would resolve jurisdictional issues at argument. I'm not certain there was... There's been no briefing on that issue, Your Honor. But the Tyson case seems to be pretty much on point. But nobody's arguing the contrary. You all don't argue otherwise. I think that's... The other side doesn't. Yes, Your Honor, that's correct. If there are no further questions, I do appreciate the opportunity. I would say that there is a declaration in the record from William Rubenstein, who is the author of Newberg on class actions, describing this case as an advertisement for a model class action. I'm proud of the work that we've done in this case. I'm proud of the work that we were able to perform with Dish and with Judge Eagle's oversight. And I would ask you to affirm her judgment. Do you have further questions? No, sir. No, thank you. Thank you. Thank you, Your Honor. Thank you. Mr. Rosenkranz, you've got some rebuttal time, sir. Thank you, Your Honor. Let me start with the jurisdictional point and just clarify what actually happened. We did note to the court that there was a jurisdictional problem. We identified some cases about why there's a jurisdictional problem. Tyson did not address jurisdiction. And one of the reasons that appeals get heard only after the claims process is done is because it goes directly to Judge Wilkinson's question, okay, can't this be cleaned up? And the claims process is demonstrating that this class was never ascertainable. Let me give you an example of something that happened before judgment. So it's part of the appeal in this case. The district court certified as capable of receiving checks here and now without any claim form 11,000 people simply because they were listed on the database and the district court concluded that there was no. . . Only to find that there were errors either of the kind you allege, either in the class certification aspect of it or in the instructions as to agency. It makes no sense. What I'm saying is to go through the entire claims adjudication process, only to find that there's no effective certification or effective agency. It's wasted motion. I totally agree, and that's not what we're arguing. No, you don't agree. I totally agree with you that you don't go through the claims process before you figure out the class judgment. But what you need, and Rule 23 says this, and this court's opinion in EQT says it, you need to know what the claims process is going to look like and that those people are ascertainable. So that, for example, when a class member who is defined as associated with the class, something the jury never determined whether someone was actually associated with the class because, and by the way, the jury also never determined whether anyone got two phone calls, an element of the claim. At the end of the day, the court has to ask itself, ex ante, the court has to ask itself, at the end of the day, will I be able to figure out which people received these two phone calls? And the answer is, and it has to be 18,000 trials because two calls is an element of the claim. We have a jury trial right to that. And if at the end of the day the only way to figure out is who got two calls, the only way to figure that out is with a jury trial or extensive proceedings by way of summary judgment on each of them, you don't have an ascertainable class. And that does not mean, Your Honor, that you cannot bring class actions under the TCPA. You can. But the way you do it normally is to say, here are subscribers. It doesn't matter whether they're the ones who answered the phone. I still find it hard to go along with you from the outset in the sense that a lot of the issues that you're raising all still go to the way in which the class was defined. And I come back to the point, the way in which the class was defined drew explicitly from the statutory language. Your Honor, again, I know I've said this already. The formal words on a piece of paper make no difference if the district court allowed into the class people who do not match that definition. What matters for class certification is who the plaintiffs are going to be. And the plaintiffs, the district court said it five times. It was not a passing mention. Five times in its order that it was a — But the problems that you have with class membership are fundamentally problems that you have with the way in which Congress wrote the private cause of action because you think the class membership ought to be limited to subscribers. Your Honor, that is not the problem. That is an argument that we've made. I've not made that argument to you today. Maybe there are other ways to define the class so that anyone who got new phone calls 10 years ago can be in the class. Maybe that can be done. Plaintiff has never pointed out how that can be done. And it's really important to get the class definition correct right up front because otherwise these cases don't go to trial. They compel settlement. And if you can just clean it up in the back end, a case that cannot be cleaned up, then no one will ever certify proper classes. I have to say one last thing about scope, if I may, because I had said at the outset that this was going to be our most important point. Krakauer does not dispute what the law is here. There are two legal rules in play. The first is that crimes and torts are not within the scope of an agent's authority except in the rare circumstances where the principal issued a clear instruction to violate the law. The second is that when a principal expressly prohibits an act and does not later expressly contradict that prescription, there can be no authority and therefore no liability. Do not call Krakauer. Whatever you do, do not call him again. That is an expressed prescription, and there's no way for any agent to interpret that prescription as a statement, when I told you not to call anyone for a violation, I am now contradicting that statement. And the jury was instructed that if Krakauer's claims fall, the entire class falls with him. If you were to decide you were right later on, all the claims adjudication process would have been useless. A useless expenditure. Well, the trial would have been a useless expenditure. You can go back and retry the case on liability. But if you don't have the correct plaintiff, a plaintiff who does not satisfy. You know, we've been rounding around on this, but I don't understand how someone cannot be a correct plaintiff when, first of all, there was a screening mechanism employed to make sure that plaintiffs, a lot of extraneous plaintiffs were not included, and also when Congress established the registry as a registry of numbers and the statutory violation here is causing, is calling numbers in violation of that registry. The whole idea of broadening this out into if someone is associated with the number, or maybe they've left the house, or maybe they've done this or that, but the key concept here was the number. And, you know, trying to make the statute into something that Congress didn't write by, first of all, talking about subscribers, and second of all, raising what I think is a bit of a red herring, and then said, well, there may be somebody who is a member of the class, and they've left the home, and yet you're still including them as a member of the class, to which I think the response is the claims adjudication process will weed those out, and the whole construct of the statute is written around telephone numbers, and not whether somebody's in the house or whether somebody's not in the house or whatever. It's written around the number. Don't call the number. That's what defines the class. That's what gives standing. And that's what it seems to me in this proper sequencing, that it would be essential for the district court to know the answers to the class certification claims and to the agency claims before we proceed with an exhaustive, time-consuming process that at the end of the day may all go for naught. Your Honor, I understand what you're saying about class certification. I was making a different point, which is that there is — Is there anything new you have to say about this? There is. One last thing, and then I will sit down. When I was saying that you have the wrong plaintiff, I was saying on these facts, Krakauer is quite simply not someone for whom the agent had authority. But forget about just him. I'm saying when a contract says and is frequently repeated, do not make illegal calls, agency law does not allow the agent to go and make illegal calls. You've covered all that. You've got something new. But this is not — yes, Your Honor, but this is not a question of liability. It's also a question of scope of authority. If agents get to say, I know you told me not to — Unless I missed something. I don't think it's — I asked you if you had something new raised, and I feel like I've heard that point several times. Okay. I've given you extra time, all right? And I think we're going to have to at some point conclude. And I want to thank you very much for your spirited argument. Thank you both. Thank you, Your Honor. Unless you have any further questions. All right, we'll come down and recalculate and take a brief recess. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, Robert B. King, Irene C. Berger